### EXIDE CORPORATION,
Appellant–Plaintiff,

v.

### MILLWRIGHT RIGGERS, INC.,
Appellee–Defendant.

Exide Corporation, Appellant–Plaintiff,

v.

### Brehob Corporation, Appellee–Defendant.

Nos. 18A05–9908–CV–380, 18A04–9906–CV–278.

Court of Appeals of Indiana.

April 20, 2000.

**474**

Michael C. Terrell, Mary T. Doherty, Sommer & Barnard, Indianapolis, Indiana, Attorneys for Appellant.

Donald K. McClellan, McClellan McClellan & Arnold, Muncie, Indiana, Attorney for Appellees.

## OPINION

SHARPNACK, Chief Judge.

Exide Corporation ("Exide") appeals separate trial courts' granting of summary judgment in favor of Brehob Corporation ("Brehob") and Millwright Riggers, Inc. ("Millwright") (collectively, "the contractors").[1] Exide raises seven issues against Brehob and six issues against Millwright, which we consolidate and restate as:

1) whether Brehob was entitled to summary judgment on a theory of collateral estoppel based upon another trial court's grant of summary judgment against Exide on the same claims that Exide raised against Brehob;

2) whether the trial courts erred when they entered summary judgment against Exide on its claims for breach of contract for failure to indemnify;

3) whether the trial courts erred when they granted summary judgment against Exide on its claims for breach of contract for failure to pay Exide's attorneys' fees; and

4) whether the trial courts erred when they granted summary judgment against Exide on its claims for breach of contract for failure to provide insurance coverage.

We affirm in part and reverse in part.

The relevant facts follow. Exide operates a battery-smelter factory in Muncie, and these appeals arise from two separate negligence claims against Exide for injuries that were incurred at that facility. In the first case, Exide hired two contractors, Millwright and Brad Snodgrass, Inc. ("Snodgrass"), to renovate and repair parts of the factory in the summer and fall of 1994. Carl Sylvester, a Snodgrass employee, was working at the Exide facility on October 14, 1994. Sylvester was walking on a catwalk that Millwright had installed when he fell through an improperly secured grating and struck the floor approximately twenty feet below, thereby sustaining serious injuries. Sylvester filed suit against Exide in the Delaware County Circuit Court on Nov. 29, 1995. On January 25, 1996, Exide filed its answer and a third-party complaint against Millwright and Snodgrass, claiming that, pursuant to indemnity agreements that Millwright and Snodgrass had signed, they were contractually obligated to indemnify Exide, pay Exide's attorneys' fees, and provide Exide with insurance. On November 25, 1997, Snodgrass filed a motion for summary judgment against Exide's third-party complaint, and Millwright did the same on December 12, 1997. After the submission of briefs by the parties, the circuit court granted Snodgrass and Millwright's motions for summary judgment against Exide on all of its claims on May 19, 1998, leaving Sylvester's claims to be resolved later.[2]

---

1. Exide's separate appeals against Brehob and Millwright were consolidated for assignment to the same panel because the cases arise out of similar facts, address the same issues, and focus upon identical contracts.

2. Sylvester dismissed his claims against Exide on June 1, 1999. On that same day, Exide dismissed its third-party claims against Snodgrass. Neither Sylvester nor Snodgrass are parties to this appeal.

We now turn to the second incident at issue. In the winter of 1995, Exide hired Brehob to repair a hoist system at the factory. Steve Watkin, a Brehob employee, was working in the factory on December 6, 1995. As Watkin was working, he "fell into an opening in the top of a vat of molten lead" and was burned on his left leg and foot. Brehob Record, p. 18.[3] Watkin filed suit against Exide in the Delaware County Superior Court on July 18, 1997. On September 15, 1997, Exide filed an answer and a third-party complaint against Brehob, claiming that, pursuant to an indemnity agreement Brehob had signed, Brehob was contractually obligated to indemnify Exide, pay its attorneys' fees, and provide Exide with insurance. Subsequently, Brehob moved for summary judgment against Exide on December 23, 1998. Following the submission of briefs and oral argument by the parties, the superior court entered summary judgment in favor of Brehob on May 11, 1999.

■ When we review a trial court's ruling on a motion for summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986); *see* Ind. Trial Rule 56. The appellant bears the burden of proving the trial court erred in determining that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmovant. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). A genuine issue of material fact exists where facts concerning an issue, which would dispose of the litigation, are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. *Scott v.*

*Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct. App.1991). On appeal, we scrutinize the trial court's determination to ensure that the nonprevailing party is not improperly denied its day in court. *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240, 1243 (Ind.Ct.App.1994), *trans. denied.* When the language of a written contract is not ambiguous, its meaning is a question of law for which summary judgment is particularly appropriate. *Dvorak v. Christ*, 692 N.E.2d 920, 923 (Ind.Ct.App. 1998), *reh'g denied, trans. denied*, 706 N.E.2d 171.

### I.

■ The first issue is whether Brehob was entitled to summary judgment in the Delaware Superior Court on a theory of collateral estoppel based upon the Delaware Circuit Court's grant of summary judgment against Exide on the same claims that Exide raised against Brehob. Exide contends that the entry of summary judgment in its case against Millwright does not collaterally estop it from raising its contractual claims against Brehob. Brehob asserts that because Exide raised and litigated the same issues in the circuit court, and the issues were resolved against Exide, Exide was barred from raising these claims against Brehob in the superior court.

■ Collateral estoppel generally "operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Hayworth v. Schilli Leasing, Inc.*, 669 N.E.2d 165, 167 (Ind.1996) (quoting *Sullivan v. American Cas. Co.*, 605 N.E.2d 134, 137 (Ind.1992)). Where, as here, the defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff had previously asserted and lost against another defendant, this use has been termed

---

**3.** For purposes of clarity, we will address the record from Exide's appeal against Millwright as the "Millwright Record," and we will ad-

dress the record from Exide's appeal against Brehob as the "Brehob Record."

"defensive" collateral estoppel. *Tofany v. N.B.S. Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind.1993). To determine whether the defensive use of collateral estoppel is appropriate, a court is to consider whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Id.*

In the instant case, the Delaware Circuit Court granted summary judgment in favor of Millwright and against Exide on May 29, 1998. However, the Circuit Court did not enter a final judgment in favor of Millwright pursuant to Ind. Trial Rule 54(B) until July 23, 1999, which was *after* the superior court entered final judgment in favor of Brehob and against Exide on May 14, 1999.[4] Because the circuit court's decision in Millwright's case was not final and was subject to change, the superior court correctly declined to grant preclusive effect to the circuit court's grant of summary judgment. Consequently, Exide was not collaterally estopped from raising its breach of contract claims against Brehob by the summary judgment in Millwright's case. *See, e.g., New Haven v. Chemical Waste Management*, 701 N.E.2d 912, 924 (Ind.Ct.App.1998), *trans. denied*, 714 N.E.2d 174 (affirming the trial court's determination that res judicata and collateral estoppel did not apply because the earlier case had not yet been resolved on the merits). Therefore, we will address Exide's claims against both Brehob and Millwright on the merits in the following sections.

## II.

■ The second issue is whether the trial courts erred when they entered summary judgment against Exide on its claims for breach of contract for failure to indemnify. Exide claims that its contracts with the contractors clearly required them to indemnify Exide for all negligently caused injuries that occur at its factory, even injuries that were due to Exide's own negligence. The contractors assert that the contracts did not unambiguously state that they were required to indemnify Exide for its own negligence, and, therefore, those provisions are unenforceable.

■ Initially, we review the relevant rules of contract interpretation. When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1311 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *See id.* at 1313. Words used in a contract are to be given their usual and common meaning unless, from the contract

---

4. Indiana Trial Rule 54(B) provides as follows:

"(B) Judgment upon multiple claims or involving multiple parties. When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final."

T.R. 54(B).

and the subject matter thereof, it is clear that some other meaning was intended. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols,* 583 N.E.2d 142, 146 (Ind.Ct.App.1991). Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

In regard to indemnification clauses, we have previously stated:

"Ordinarily, in the absence of prohibitive legislation, no public policy prevents the parties from contracting as they desire. In Indiana, a party may contract to indemnify itself against its own negligence only if the other party *knowingly* and *willingly* agrees to indemnify.

Such provisions are strictly construed; however, and will not be held to provide indemnity unless so expressed in clear and unequivocal terms. Courts disfavor such indemnification clauses because to obligate one party to pay for the negligence of the other party is a harsh burden which a party would not lightly accept. The concern with the language of an indemnity clause in this area is that it not only define the area of application, that is, negligence, but also define the cause of damages in terms of physical or legal responsibility, that is, to whom the clause applies. For this reason, the language of the indemnification clause must reflect the indemnitor's knowing and willing acceptance of the burden and must express the burden in clear and unequivocal terms.

For example, if a clause simply states that a subcontractor shall indemnify a general contractor for any negligence which arises from the job, it is sufficient to show that the clause applies to negligence but is insufficient to inform the subcontractor that it must indemnify the general contractor for acts of the general contractor's own negligence. The claim of negligence which arises from the job could have been caused by the negligence of the general contractor, the subcontractor, third persons, or a combination of them. This is the very reason the indemnity for the indemnitee's own negligence must be specifically, not generally, prescribed. Therefore, in order to reflect a knowing and willing acceptance of such a harsh burden, the indemnification clause must expressly state, in clear and unequivocal terms, that the indemnitee agrees to indemnify the indemnitor against the indemnitor's own negligence."

*Id.* at 145–146 (citations omitted) (emphasis in original).

In the instant case, the indemnification provisions in the contracts between Exide and the contractors are identical and provide as follows:

"Without limiting the foregoing, Contractor, for itself, its successors and assigns releases Exide and agrees to indemnify, defend with counsel satisfactory to Exide and hold harmless Exide and its officers and employees from any against any and all liability, claims, actions, suits, losses, costs and expenses (including without limitation attorneys' fees), fines or penalties which may arise in any way, directly or indirectly, from Contractor, its employees, subcontractors and their employees, third persons or the government, and from entry onto the Site or any other Exide property or from use, the possession, handling, storage, transportation, and treatment or disposal, of any materials or exposure thereto or contact therewith. This indemnity shall survive the termination or expiration of any contract between the contractor and Exide or receipt and removal of the materials. If any portion of this indemnity shall in the future be deemed or held to be invalid or unenforceable, the indemnity shall apply and be enforceable to the maximum extent allowed by law."

Millwright Record, p. 40; Brehob Record, p. 29.

The first step is to determine whether this clause "expressly defines negligence as an area of application in clear and unequivocal terms." *Moore Heating & Plumbing,* 583 N.E.2d at 146. The clause discusses liability, claims and suits, and it contemplates losses, fines, and expenses caused by the contractors and others. These terms, in context, are the "language of negligence" and demonstrate that the clause applies to acts of negligence. *See id.*

Next, we must determine whether the indemnification clause also expressly states, in clear and unequivocal terms, that it applies to indemnify Exide for its own negligence. *See id.* We conclude that it does not. The clause explicitly indemnifies Exide for the acts of the contractors and their employees, subcontractors and their employees, third persons, and the government, but it does not explicitly state that the contractors must indemnify Exide for its own negligent acts. The clause contains no clear statement that would give the contractors notice of the harsh burden that complete indemnification imposes. Consequently, the indemnification clause does not require the contractors to indemnify Exide for its own negligence, and the trial courts did not err on this point when they granted summary judgment in favor of Millwright and Brehob. *See Dohm & Nelke v. Wilson Foods Corp.,* 531 N.E.2d 512, 514 (Ind.Ct.App.1988) (affirming trial court's determination that an indem-

nification clause was unenforceable because it did not explicitly inform the purchaser of a machine that the purchaser was required to indemnify the manufacturer for the manufacturer's own negligence in designing and manufacturing the machine); *cf. Moore Heating & Plumbing,* 583 N.E.2d at 144, 147 (determining that an indemnification clause was enforceable where the clause provided that the contractor would indemnify its employer "to the fullest extent permitted by law" for the employer's negligence).[5]

Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the material designated to the trial court. *Illinois Farmers Ins. v. Tyson,* 634 N.E.2d 1355, 1358 (Ind.Ct.App. 1994), *trans. dismissed.* Because we affirm the judgments of the trial courts by holding that the indemnity provision is unenforceable due to its failure to clearly state that the contractors were required to indemnify Exide against its own negligence, we need not address Exide's arguments that the indemnity provision is valid because it is not limited to claims arising out of exposure to hazardous materials and that the indemnity provision is not invalidated by Ind.Code § 26–2–5–1, which regulates indemnification clauses in construction and design contracts.

### III.

The third issue is whether the trial courts erred when they granted sum-

---

5. The cases cited by Exide on this issue are distinguishable. In *Thomson Consumer Electronics,* our supreme court determined that the dismissal of a manufacturer's third-party indemnification claim against a contractor was erroneous because the indemnification clause was subject to differing interpretations with differing consequences. *Thomson Consumer Electronics, Inc. v. Wabash Valley Refuse Removal, Inc.,* 682 N.E.2d 792, 794 (Ind. 1997). Here, the agreement is not susceptible to differing interpretations because it fails to clearly indicate that the contractors must indemnify Exide for its own negligent acts. In *Ozinga Transportation Systems,* a contractor was seeking indemnification from a subcontractor for the subcontractor's negligence, not its own negligence. *Ozinga Transp. Systems,*

*Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 388 (Ind.Ct.App.1997), *reh'g denied, trans. denied,* 690 N.E.2d 1183. In the instant cases, a review of the records and the parties' briefs demonstrates that Exide is only seeking to hold the contractors liable for its own negligence and has not sought indemnification for the contractors' negligence. To the extent that Exide is claiming indemnification from Brehob and Millwright for their own negligence, these claims are waived for appellate review due to Exide's failure to specifically raise them and support them with citations to legal authority and the records. *See* Ind. Appellate Rule 8.3(A)(7); *Choung v. Iemma,* 708 N.E.2d 7, 13 (Ind.Ct.App.1999), *reh'g denied.*

mary judgment against Exide on its claims for breach of contract for failure to pay Exide's attorneys' fees. . Exide asserts that even if it has no claim against the contractors for indemnification, they are still contractually obligated to pay for the attorneys' fees Exide has incurred in the course of defending itself against Sylvester and Watkin's claims. The contractors argue that Exide is not entitled to recover attorneys' fees from them because Exide is not their indemnitee.

■ As a general rule, a contract for attorneys' fees is enforceable according to its terms unless contrary to law or public policy. *Pond v. Pond,* 700 N.E.2d 1130, 1136 (Ind.1998). However, in the instant case, the contracts contain only one provision for attorneys' fees: in the contracts' indemnification clauses, the contractors are required to "indemnify, defend with counsel satisfactory to Exide and hold harmless Exide and its officers and employees from any against any and all liability, claims, actions, suits, losses, costs and expenses (including without limitation attorneys' fees), fines or penalties which may arise in any way,...." Millwright Record, p. 40; Brehob Record, p. 29. As discussed above, the indemnification provision is unenforceable because Exide is seeking indemnification from Brehob and Millwright for its own negligence, and the contracts do not specifically provide for such indemnification. *See supra* Part II. Consequently, because the indemnification clauses are unenforceable, Exide has no contractual right to attorneys' fees, and we find no error in the trial courts' judgments on this point.[6] *Cf. Ozinga Transp. Systems,* 676 N.E.2d at 388 (affirming the trial court's judgment that an employer and contractor were entitled to indemnification from a subcontractor and, therefore, were also entitled to attorneys' fees from the subcontractor according to the terms of the parties' indemnification agreement).

## IV.

■ The fourth issue is whether the trial courts erred when they granted summary judgment against Exide on its claims for breach of contract for failure to provide insurance coverage. Exide argues that even if the indemnification clauses in the contracts are invalid, the contractors were still required to provide Exide with insurance and breached their contracts by failing to do so. The contractors reply that the insurance provisions in their contracts are inapplicable here because they do not require the contractors to provide insurance coverage for personal injury negligence claims. Our discussion of the relevant rules of contract interpretation is set forth above. *See supra* Part II.

In this case, the insurance provisions in both contracts are identical and provide as follows:

"Without limiting the foregoing, Contractor shall at its own expense provide evidence of insurance reasonably satisfactory to Exide, and naming Exide as a co-insured, with respect to any liability which may accrue from or during the work performed by Contractor, or as a result of exposure to, or handling of, hazardous materials or other materials on or off the Site in connection with this contract. Such insurance shall cover claims made after the policy period based on events occurring within the policy period (occurrence coverage) *OR* shall cover events occurring within the policy period for claims made prior to 60 days of the end of the policy period (claims made coverage with an extended discovery period), and shall include provisions for the defense of the claim by the insurer at its own expense."

In *Dohm & Nelke,* attorney fees were not in dispute because the third-party plaintiff merely raised a general indemnification claim. *Dohm & Nelke,* 531 N.E.2d at 514.

---

**6.** The cases cited by Exide do not require a different result on this issue. *Davis* is not binding precedent because it is not an Indiana case. *Davis v. Hoosier Energy Rural Elec. Co-op, Inc.,* 19 F.3d 365 (7th Cir.1994).

Millwright Record, pp. 39–40; Brehob Record, pp. 28–29 (emphasis in original).

Contrary to the contractors' arguments, this clause requires them to obtain insurance on Exide's behalf to cover personal injury actions that arise as a result of their negligent acts. Giving the terms of the clause their usual and common meanings, the clause unambiguously states that Millwright and Brehob, as contractors, must obtain insurance to cover *"any* liability which may accrue from or during the work performed by [the contractors]." Millwright Record, pp. 39–40; Brehob Record, pp. 28–29 (emphasis added). Consequently, the contractors were required to obtain insurance on Exide's behalf to protect Exide against the type of claims that Sylvester and Watkin filed. *See, e.g., Huntington Mortg. Co. v. DeBrota,* 703 N.E.2d 160, 165–166 (Ind.Ct.App.1998) (affirming the trial court where the plain, unambiguous language of the parties' mortgage contract stated that the borrower would pay the premiums for private mortgage insurance, if such insurance was necessary).

 The contractors also assert that the insurance clauses in their contracts are similar to the indemnification clauses. Therefore, they argue, if the indemnification clauses are unenforceable, then the insurance clauses must also be invalid. We disagree. As a matter of interpretation, indemnification agreements that require one party to compensate the other party for the other party's own negligence are construed much more strictly than insurance agreements. A stricter reading is given to such indemnification clauses because indemnification for another party's own negligence is a harsh burden that a party would not lightly accept. *See Moore Heating & Plumbing,* 583 N.E.2d at 145. Therefore, such indemnification provisions will not be held to provide complete indemnity unless the indemnity is expressed in clear and unequivocal terms. *See id.*

 In contrast, an agreement to insure is an agreement to provide both parties with the benefits of insurance regardless of the cause of the loss (excepting wanton and willful acts). *Indiana Erectors, Inc. v. Trustees of Indiana University,* 686 N.E.2d 878, 880 (Ind.Ct.App.1997), *reh'g denied.* An agreement to insure differs from an agreement to indemnify in that, with an agreement to insure, the risk of loss is not intended to be shifted to one of the parties, but is instead intended to be shifted to an insurance company. *Id.* Neither party intends to assume a potential liability because both are demonstrating appropriate business foresight in avoiding liability by allocating it to an insurer. *Id.* Therefore, standard rules of contract interpretation apply to insurance agreements, rather than the strict construction given to self-indemnification clauses. *See, e.g., Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985) ("Generally, in Indiana, contracts for insurance are subject to the same rules of interpretation as are other contracts."). Consequently, because we examine indemnity provisions and insurance provisions using different levels of scrutiny, our determination that the indemnification provisions in the contracts at issue are invalid does not also automatically void the insurance clauses.

 Furthermore, the court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Indiana–American Water Co. v. Town of Seelyville,* 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998). Here, the insurance provisions and the indemnification provisions appear in separate sections of the contracts. In addition, the indemnification provisions provide that they operate "[w]ithout limiting the foregoing" clauses of the contracts, which includes the insurance clauses. Millwright Record, p. 40; Brehob Record, p. 29. Consequently, although the indemnity clauses in the contracts at issue are invalid, the insurance provisions are unaffected and remain valid.

Because we have determined that the insurance provisions in the contracts are valid, we must next determine whether there is a dispute of material fact as to whether the contractors have breached their obligations to provide insurance to Exide. The moving party in a motion for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Carroll v. Jagoe Homes, Inc.*, 677 N.E.2d 612, 612 (Ind.Ct.App. 1997), *trans. denied*, 690 N.E.2d 1181. Here, neither Millwright nor Brehob argued to the trial court that they had complied with the insurance clause of the contract, although Millwright did generally challenge the clause's validity in the circuit court. In fact, on appeal both contractors concede that "there is no evidence that [they] ever secured liability insurance naming Exide as an additional insured." Millwright's Brief, p. 23; Brehob's Brief, p. 23. Thus, summary judgment on this claim is inappropriate because the contractors have both failed to make prima facie evidentiary showings that there is no material dispute of fact and that they are entitled to judgment as a matter of law. *See, e.g., Sam v. Wesley*, 647 N.E.2d 382, 386 (Ind.Ct.App.1995) (reversing trial court's entry of summary judgment where the movant had failed to designate any evidence to the trial court in support of two of the movant's contentions, thereby failing to establish a prima facie showing that the movant was entitled to judgment as a matter of law).

For the foregoing reasons, we affirm the judgments of both trial courts in part, reverse the judgments of both trial courts in part, and remand for further proceedings.

Affirmed in part and reversed in part.

RILEY, J., and KIRSCH, J. concur.