Christine Ann EITLER,
Appellant–Plaintiff,

v.

ST. JOSEPH REGIONAL MEDICAL CENTER SOUTH–BEND CAMPUS, INC., and Gina Webb, Appellees–Defendants.

No. 71A04–0209–CV–464.

Court of Appeals of Indiana.

June 3, 2003.

John C. Hamilton, South Bend, IN, Attorney for Appellant.

Thomas J. Brunner, Alison G. Fox, South Bend, IN, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff/Appellant Christine Ann Eitler ("Eitler") appeals the trial court's grant of summary judgment in favor of Defendants/Appellees St. Joseph Regional Medical Center–South Bend Campus ("the Hospital") and Gina Webb ("Webb"). We affirm.

Eitler raises three issues for our review, which we renumber and restate as:

I. Whether the release signed by Eitler operated to bar recovery on her defamation claims against the Hospital and Webb.

II. Whether the absolute privilege expressed in the release violates public policy.

II. Whether Eitler's claim under the blacklisting statute was barred because she voluntarily left her employment with the Hospital.

On June 18, 2000, Eitler voluntarily left her employment as a registered nurse in the Hospital's neo-natal intensive care unit. At the time that Eitler resigned, Webb was her supervisor.

On June 28, 2000, Eitler applied for employment with Star Light Health Services ("Star Light"), an agency that provides health care workers to other health care entities. As part of her application,

Eitler was required to send a form entitled "Confidential Reference Check Report" (hereinafter, "form" or "evaluation form") to her former employer. The form, which was sent to Webb, required her to rate Eitler, by use of a check mark, as either "Above Average," "Average," or "Below Average" in the following eight categories: performance, adaptability, judgment, dependability, cooperation, initiative, personality, and health/attendance. The form also required Webb to indicate whether she would rehire Eitler by placing an "x" on the blank line next to the words "Yes," "No," or "Undecided." The form sent to Webb contained an "authorization" (hereinafter, "authorization/release") which stated that "I hereby authorize the addressed individual [Webb] ... to furnish an employment reference (verification/evaluation) to STAR LIGHT Health Services and do hereby release both parties from any and all liability for damages in the furnishing and receiving of this information." Appellant's App. at 92. The form, including the authorization/release, was signed by Eitler.

Webb rated Eitler, by use of check marks, as "Average" in the first three of the aforementioned categories and "Below Average" in the remaining categories. Webb indicated, by use of an "x," that she would not rehire Eitler.

Star Light received the completed form from Webb on or about July 28, 2000, approximately seven days after it made an offer of employment to Eitler. Star Light invited Eitler to an orientation session, and beginning on August 1, 2000, Eitler attended the four-day session. Star Light paid Eitler for her participation. Eitler, like the other nurses affiliated with Star Light, was hired on an "as needed" basis.

Star Light's "executive" told Eitler, however, that she needed to get another evaluation to balance the one received from Webb. After explaining to the Star Light executive that she had experienced difficulties with Webb during her employment at the Hospital and that she had received excellent evaluations from other supervisors, Eitler was requested to send an evaluation form to former supervisor, Kim Skupski ("Skupski"). Skupuski, who had supervised Eitler at the Hospital before Webb became supervisor, filled out the form and returned it to Star Light. Skupski rated Eitler as "Above Average" in all eight categories and indicated that she would rehire Eitler.

In the nine-month period from the date of the orientation until she filed her complaint against the Hospital and Webb, Eitler did not obtain any work assignments from Star Light.[1] Eitler filed her complaint against the Hospital and Webb on the basis that Webb's evaluation was the cause of her lack of assignments. In her complaint, Eitler made claims based upon defamation, blacklisting, and intentional infliction of emotional distress.

The Hospital and Webb responded to the complaint by filing a motion for summary judgment. In its motion, the Hospital and Webb argued that in signing the release, Eitler consented to any defamation and/or blacklisting that might arise from Webb's completion of the evaluation form. It is from the trial court's grant of that summary judgment on the defamation

---

1. During this period of time, Star Light did not engage a single neo-natal ventilation patient. Consequently, none of the seven neo-natal nurses who participated in the August, 2000 orientation were ever called back for neo-natal ventilation employment. Affidavit of Hutcheson; Appellant's App. at 35. Eitler bases her claims on her availability for other nursing duties.

and blacklisting claims that Eitler now appeals.[2]

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). We must liberally construe all designated evidence in favor of the non-moving party and resolve any doubt against the moving party. *Porter v. Irvin's Interstate Brick & Block Co., Inc.*, 691 N.E.2d 1363, 1364 (Ind.Ct.App.1998). We will sustain the grant of summary judgment on any theory or basis supported by the designated materials. *Sharp v. Town of Highland*, 665 N.E.2d 610, 613–14 (Ind.Ct. App.1996), *trans. denied.* Summary judgment "is appropriate only when the designated evidentiary matter demonstrates that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 965–66 (Ind.Ct.App.2001).

■■■ Before we begin our discussion of Eitler's contentions, it is necessary to delineate the parameters of a defamation claim. Defamation is that which tends to "injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *McQueen v. Fayette County School Corp.*, 711 N.E.2d 62, 65 (Ind.Ct.App.1999), *trans. denied.* To recover in an action for defamation, "that which caused the alleged defamation must be both false and defamatory." *Id.* Moreover, a plaintiff must establish the basic elements of defamation: (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages. *Id.* The determination of whether a communication is defamatory is a question of law for the court. *Id.*

**I.**

■■■ Eitler contends that the trial court erred in determining as a matter of law that by signing the authorization/release she consented to Webb's alleged defamation. Eitler argues that Webb's answers on the evaluation form were motivated by malice and that the trial court erred in determining as a matter of law that her consent created the defense of absolute privilege which barred her defamation action.

In *Ernst v. Indiana Bell Telephone Co.*, 475 N.E.2d 351 (Ind.Ct.App.1985), this court held that an employee implicitly consented to the publication of defamatory matter by initiating union arbitration and unemployment compensation hearings. We also held that implicit consent to the publication of defamatory matter creates an absolute privilege. *Id.* at 355 (citing *Restatement (Second) of Torts* § 583, Comment (f)) (1977).[3] We further held that "[e]vidence of alleged malice does not defeat an absolute privilege." *Id.* at 355–56.

Eitler argues that *Ernst* should be interpreted to apply only in the context of a "special set of circumstances" such as administrative proceedings. We note, however, that the aforementioned context was relevant in the court's determination of

---

**2.** Eitler does not appeal the trial court's dismissal of her claim for intentional infliction of emotional distress.

**3.** Section 583 states that "the consent of another to the publication of defamatory matter concerning [her] is a complete defense to [her] action for defamation." Comment (f) states in pertinent part that "[t]he privilege conferred by the consent of the person about whom the defamatory matter is published is absolute. The protection given by it is complete, and it is not affected by the ill will or personal hostility of the publisher. . . ."

whether the employee had *implicitly* consented to an investigation that resulted in the publication of defamatory materials. Here, Eitler signed an authorization/release that authorized Webb to furnish a reference by completing the form sent to her and that released all parties from *any and all liability* for damages in furnishing and receiving the information. The promise to release all parties from "any and all liability" was an explicit and unambiguous consent to refrain from the prosecution of all claims against the Hospital and Webb.

Furthermore, we conclude that Webb's response was clearly within the scope of Eitler's consent. Eitler's consent authorized the Hospital and/or Webb to complete the evaluation and return it to Star Light. Webb's response to the evaluation consisted of eight check marks in boxes and an "x" on a line. Webb did not provide any additional comment or information that Eitler did not solicit. In addition, there is no evidence to indicate that Webb published the evaluation to anyone but the authorized entity, Star Light. Webb's evaluation was clearly within the scope of the consent that Eitler provided by signing the authorization/release.

Eitler's designated evidence confirms that Webb's response was within the scope of her consent. In her affidavit filed in response to the Hospital's and Webb's motion for summary judgment, Eitler goes into a detailed discussion of her belief that Webb held a grudge against her, was "consistently harsh, unfairly and inaccurately critical and vindictive," and had purposefully waged a "campaign" to force Eitler to resign or be terminated. Appellant's App. at 66–68. At the very least, Eitler had reason to know that Webb's response was going to be negative. This is sufficient to allow the trial court to conclude that she consented to the negative connotation of Webb's response. *See Restatement (Sec-*

*ond) of Torts* § 583, Comment (d) stating in part that "it is not necessary that the other know that the matter to the publication of which [she] consents is defamatory in character. It is enough that [she] knows the exact language of the publication or that [she] has reason to know that it may be defamatory."

In light of the explicit and unambiguous language of the signed authorization/release and the circumstances of this case, the trial court did not err in determining as a matter of law that Eitler's consent served to bar her defamation claim.

## II.

Eitler argues that the authorization/release "should be struck down as a violation of public policy because (a) it was not a bargained for contract; (b) it was overbroad: it gives no warning that it would cover and immunize false reports; and (c) it contradicted the limiting proviso the Legislature placed in Ind.Code § 22–5–3–1(b)." Appellant's Brief at 8.

Eitler first contends that the authorization/release should not be enforced because there is no contract between her and Star Light. Indiana law, however, does not require a "contract of consent"; it simply recognizes that one may consent to publication of defamatory matter. *See Ernst,* 475 N.E.2d at 355; *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.,* 452 N.E.2d 989, 998 (Ind.Ct. App.1983). Furthermore, even if a "contract" was required, Eitler clearly offered a complete release to the Hospital and Webb in exchange for the provision of an evaluation. The Hospital and Webb accepted that offer by providing the evaluation and sending it to Star Light. Thus, a contract was formed which the Hospital and Webb expect Eitler to honor. The nature of Eitler's relationship with Star Light is irrelevant to this issue.

Eitler also contends that the language of the authorization/release was insufficient to warn her that she was consenting to defamatory statements by Webb. In support of this contention, Eitler cites *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473 (Ind.Ct.App.2000), *trans. denied, Powell v. American Health Fitness Center of Fort Wayne, Inc.*, 694 N.E.2d 757, 760–61 (Ind.Ct.App.1998), and related cases.

The cases cited by Eitler deal with the issue of whether a party may enter into a contract that exculpates the party from the consequences of its own negligence. *See e.g., Powell*, 694 N.E.2d at 760. This court held that that in the absence of prohibitive legislation, no public policy prevents parties "from contracting as they desire." *Exide*, 727 N.E.2d at 479. However, courts generally disfavor these indemnity contracts because "to obligate one party to pay for the negligence of the other party is a harsh burden which a party would not lightly accept." *Id.* Accordingly, we require that the indemnity provisions of the contract "must both specifically and explicitly refer to the negligence of the party seeking release from liability." *Powell*, 694 N.E.2d at 761.

Eitler analogizes the indemnity clauses in the aforementioned cases to the authorization/release that she provided to the Hospital and Webb. We do not agree that the specificity requirement for an indemnity clause should be applied here. First, the Hospital and Webb did not present Eitler with a contract in which they attempted to indemnify themselves from the effects of any defamation. Instead, Eitler made the offer to release the Hospital and Webb from any and all liability, albeit by the use of Star Light's form. Second, Eitler has presented us with no reasoned basis for applying negligence law to this defamation action.

In *Smith v. Holley*, 827 S.W.2d 433 (Tex.App.–San Antonio 1992), *writ denied, reh'g of writ of error overruled,* the plaintiff made the same argument as Eitler now makes. The court rejected the argument, noting that the authority cited by the plaintiff involved claims of gross negligence, not defamation. *Id.* at 438. In so doing, the court stated that "it is universally held that in the right circumstances one can consent to certain actions that otherwise would be intentional torts. This is true of defamation, surgical procedures, trespass to land, sporting events that involve physical contact, and a host of other acts that would be tortious in the absence of consent." *Id.* (citing *Prosser & Keeton on the Law of Torts* § 18). We agree with the Texas court and find that there is no reason to graft the requirements of *Exide* and *Powell* into defamation law.

█ Eitler further contends that the creation of an absolute privilege by the authorization/release exceeds the policy set forth in Ind.Code § 22–5–3–1(b), which provides that an employer who discloses information about a former employee is immune from civil liability for disclosure and the consequences proximately caused by the disclosure, "unless it is proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made." Eitler contends that "[t]he broad release Star Light used should not, by judicial fiat, be allowed to gut § 22–5–3–1(b)'s proviso, because, to do so, would violate the very public policy § 22–5–3–1(b) embodies and reflects." Appellant's Brief at 22.

█ Ind.Code § 22–5–3–1(b) is not intended to express a broad policy against defamation. It is a statute that expresses the legislature's approval of a free flow of information between a former and prospective employer. In essence, the statute is designed to protect employers who are

exchanging information. Interpreting the unambiguous language of the authorization/release does not "gut" the statute. Indeed, the absolute privilege granted by the language serves to do the same thing the statute does, i.e. encourage the free flow of information between employers. Accordingly, we conclude that the authorization/release does not violate public policy.

## III.

■ Eitler also contends that the trial court erred in determining as a matter of law that her blacklisting claim was barred because she voluntarily left her employment with the Hospital. In support of her contention, Eitler argues that this court should revisit *Burk v. Heritage Food Service Equipment Inc.*, 737 N.E.2d 803 (Ind. Ct.App.2000).

However, we do not reach this argument. The trial court also concluded as a matter of law that Eitler's blacklisting claim was barred by the authorization/release she signed. The authorization/release released the Hospital and Webb from "any and all" liability for damages in the furnishing of the requested information. As we concluded above, the authorization/release acted to bar Eitler's defamation claim. We now conclude that the trial court correctly determined as a matter of law that it also operates as a bar to her blacklisting claim.

Affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurring in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I agree that the information provided by Webb and the Hospital pursuant to the form submitted by Eitler with her request for an evaluation did not violate public policy. Therefore Eitler may not successfully claim that she was defamed by the information provided to Star Light. Neither may she recover upon a theory that the defendants blacklisted her.

I write separately, however, to express my disagreement with the analysis of the majority with regard to the effect of the "authorization/release" provision of the form signed by Eitler. This portion of the form authorized Webb and the Hospital to forward the evaluation to Star Light and specifically released Star Light and Webb/Hospital "from any and all liability for damages in the furnishing and receiving of this information". Appellant's App. at 92. Notwithstanding I.C. § 22–5–3–1(b), the majority concludes that this release confers "absolute" immunity to Webb and the Hospital. I respectfully disagree.

The statute confers immunity upon a former employer providing information "unless ... the information disclosed *was known to be false at the time the disclosure was made*." *Id.* (emphasis supplied). If this provision is to have any meaning, it signifies a binding legislative policy determination that a former employer may not avoid civil liability for providing information known to be false. This is certainly contrary to the majority's "absolute" immunity analysis which, under the circumstances, would permit the employer to provide knowingly false information with total impunity.[4]

---

4. To the extent that the authorization/release confers duties, responsibilities, and benefits or privileges upon the respective parties to it, it is analogous to a contract if not a contract in fact. Accordingly, it is well settled that

" 'statutes and the law as otherwise existing become a part of every contract and must be read into it.' " *Prof'l Adjusters, Inc. v. Tandon*, 433 N.E.2d 779, 783 (Ind.1982) (quoting *Dollman v. Pauley*, 202 Ind. 387, 394, 174 N.E.

The majority goes further and holds that the absolute privilege conferred by the authorization/release is all-encompassing and includes the "right" of a former employer in providing information to a prospective employer, to attempt to prevent the former employee from obtaining employment elsewhere. I respectfully disagree because I.C. § 22–5–3–2 prohibits such conduct. See *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803 (Ind.Ct. App.2000). I must agree, however, that given the current posture of the law as enunciated in *Burk,* an employee who voluntarily left the former employment, as did Eitler in this case, may not utilize the Blacklisting Statute to launch a law suit.

Although I disagree with the overbreadth with which the majority cloaks the authorization/release, I nevertheless agree that the information provided by Webb and the Hospital does not give rise to a viable defamation claim or a viable "blacklisting" claim.

Webb and the Hospital merely filled out the pre-printed form with checkmarks and an "X." The form was submitted by Eitler with the understanding that it would be filled out and with the further understanding that the various rating categories were not all positive evaluation ratings. The information was provided by Webb and the Hospital as requested. It was within the discretion of Star Light as to what weight, if any, would be given to the evaluation.

In this context, as to the defamation claim the information was clearly evaluative in nature and constituted the subjective opinion of the evaluator. It was not susceptible to a determination that the evaluative information was either true or false. It was not therefore within the possible scope of a defamation action.

Furthermore, as noted, the information was submitted to Star Light as requested by Eitler. Even were we to include employees who had voluntarily left their former employment within the purview of the Blacklisting Statute, neither Webb nor the Hospital attempted to prevent Star Light from hiring Eitler even though the nature of the evaluation could have reasonably been considered as negative and as a strongly unfavorable evaluation.

For the reasons stated, I concur in the affirmance of the summary judgment granted in favor of Webb and the Hospital.

---

729, 731 (1931)). For this reason it would appear wholly inappropriate to construe contractual language in a manner violative of statutorily enunciated public policy. As stated in *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997):

"Indiana courts have long recognized and respected the freedom to contract. We recognize a 'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties.' However, in certain circumstances a court may declare an otherwise valid contract unenforceable if it contravenes the public policy of Indiana." (citations omitted).

In determining public policy we first look to the Constitution and to the statutory law of the State. *Id.*