## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 05 2015, 9:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEYS FOR APPELLANT

Dennis F. Cantrell
Tara Stapleton Lutes
Cantrell Strenski & Mehringer, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William H. Walden
Munster, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State Farm Fire and Casualty Company, *Appellant-Defendant,* <br><br> v. <br><br> Scott C. Smith, *Appellee-Plaintiff* | February 5, 2015 <br><br> Court of Appeals Cause No. 45A04-1407-PL-336 <br><br> Appeal from the Lake Superior Court. <br> The Honorable Thomas W. Webber, Sr., Senior Judge. <br> Cause No. 45D04-1206-PL-62 |

**Baker, Judge.**

Scott Smith lost his house and personal property to a fire. Smith and his insurer, State Farm, disagreed about the value of his loss. Smith sued State Farm for breach of contract and the trial court ultimately entered judgment for Smith following two appraisals. Finding that the final appraisal, upon which judgment was entered, did not comply with the terms of the parties' insurance contract, we reverse and remand.

## Facts

On July 16, 2010, Smith's Lake County residence caught fire and was destroyed for a total loss. State Farm insured Smith's residence and personal property pursuant to a homeowner's insurance policy (the Policy). Smith submitted an insurance claim, and State Farm eventually adjusted the loss and made payments to him pursuant to the Policy. Smith, however, disagreed with the amount of loss calculated by State Farm and requested that the claim be submitted to appraisal as set forth by the Policy:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. . . . The appraisers shall then set the amount of the loss. [If the appraisers agree,] the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. . . .

Appellant's App. p. 53.

[3]     Smith and State Farm each selected an appraiser. The two appraisers were unable to agree upon the amount of the loss, so the matter was submitted to an umpire. The umpire signed the First Appraisal Agreement, dated July 21, 2011, which calculated Smith's losses as follows:

- Recovery Cost of Dwelling:                      $103,734
- Recovery Cost of Personal Property:             $69,000
- Recovery Cost of Debris Removal:                $5,340
- Recovery Cost of Landscaping:                   $4,260
- Recovery Cost of Other Structures:              $1,294
- Recovery Cost of Additional Living Expenses:    $31,110
- Total Loss:                                     $214,838

*Id.* at 7.

[4]     The Policy provides that until repair or replacement of a dwelling is completed, State Farm "will pay only the actual cash value at the time of the loss of the damaged part of the property[.]" *Id.* at 50. After repair or replacement is completed (which must occur within two years), the insured must notify State Farm within thirty days and submit certain documentation regarding the repair or replacement. At that time, State Farm will pay the balance of the loss. The same process is followed with respect to personal property. Additionally, the Policy defines Additional Living Expenses (ALE) as follows:

> When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months.

*Id.* at 43.

[5]     Pursuant to these Policy terms, after the First Appraisal Agreement was submitted, State Farm calculated the actual cash value of Smith's dwelling and personal property and paid Smith those amounts. State Farm also paid Smith the full amount of ALE: $31,110. The total amount paid by State Farm to Smith for the actual cash value of the dwelling and personal property plus ALE was $148,524.78.

[6]     On June 6, 2012, Smith filed a lawsuit against State Farm alleging breach of contract. Specifically, Smith argued that State Farm should have paid him the full loss amount of $214,838. State Farm filed a motion for summary judgment on July 8, 2013, arguing that it had complied with the terms of the Policy and the First Appraisal Agreement. Smith filed a cross-motion for summary judgment. Following briefing and oral argument, the trial court denied both summary judgment motions. Specifically, the trial court held as follows:

> There is no disagreement between the parties for the amount paid by the defendant to the plaintiff [for ALE under] the policy. The defendant argues that it has paid the amount owing under the terms of said policy to the plaintiff and that therefore it [is] entitled to a judgment as a matter of law.
>
> ***
>
> . . . [T]he dispute between the parties [is] that the plaintiff is arguing that he is entitled to replacement costs as determined by the appraisal agreement and the defendant argues that the plaintiff is only entitled to the actual cash value of the home and personal property pursuant to [the Policy].

***

The Court further finds that the defendant has notified the plaintiff that replacement costs were available to the plaintiff for the home and personal contents subject [to] the terms of this policy.  The Court further finds that at the time of the hearing the plaintiff had not replaced his home either by buying or building another home . . . [or] has not notified the defendant of the same.

Further, the fire which is the subject of this litigation took place on July 16, 2010, and by the terms of the policy replacement costs were only available to the plaintiff up to July 16, 2012. . . .

***

The Court further finds that . . . there is certainly a dispute as to the value of the home and the personal property.  Further pursuant to the policy of insurance if there is a dispute as to the value of property, it is to be determined by appraisal.

And while the appraisers . . . have made their appraisal of the dwelling and personal property, it was done on replacement value and not on actual cash value, and only actual cash value is available to the plaintiff at this time.

. . . [T]here is a material issue of fact unresolved as to the actual cash value of the dwelling at the time of the fire and as to the cash value of personal property lost in said fire and that said values need to be determined by the appraisers and not by the defendant's claims adjuster.

***

. . . [T]he plaintiff is no longer entitled to the replacement cost values as provided in the policy of insurance . . . .

***

> Further, the parties should proceed to have the appraisers as selected by the parties and the umpire as appointed by the [trial court] reappraise the dwelling and personal property for their actual cash value on the date of the fire, which values should be dispositive of this cause of action.

*Id.* at 223-30.

[7]     Following that order, Smith's appraiser and the umpire conducted a second appraisal. State Farm's appraiser did not take part or have input in that process. On January 13, 2014, the Second Appraisal Agreement was entered, calculating the actual cash value of Smith's losses as follows:

- Dwelling Loss            $93,360.06
- Personal Property Loss   $62,100.00
- Debris Removal Loss      $5,340.00
- Landscaping Loss         $4,260.00
- Other Structures Loss    $1,394.00
- Loss of Use[1]           $106,202.00
- Total                    $272,656.06

*Id.* at 233. On January 21, 2014, Smith filed a motion for judgment on the Second Appraisal Agreement. On February 3, 2014, State Farm filed its response and asked that the trial court deny Smith's motion and vacate the Second Appraisal Agreement.

---

[1] The parties and trial court agree that "Loss of Use" is synonymous with ALE.

[8]     On March 21, 2014, the trial court denied Smith's motion. The trial court observed that while the summary judgment order found that the parties agreed regarding the amount of Smith's ALE loss, the Second Appraisal Agreement increased the ALE by $75,092. Additionally, the trial court noted that it was undisputed that "the State Farm appraiser did not participate in the discussions or negotiations of the award." *Id.* at 271. The trial court ordered that a third appraisal take place and that State Farm was to arrange for its appraiser to contact the umpire within the next fifteen days.

[9]     On March 25, 2014, Smith's attorney sent a message to State Farm's attorney stating that pursuant to the order, Smith's appraiser "waits for your appraiser to call him[.]" *Id.* at 341. On April 4, 2014, State Farm's appraiser called Smith's appraiser and left him a voicemail message requesting a call back. On April 28 or 29, 2014, Smith's appraiser called State Farm's appraiser to inform him that the appraisal process had already taken place—again, without input from State Farm. On April 29, 2014, the umpire and Smith's appraiser signed the Third Appraisal Agreement, which calculated the actual cash value of Smith's losses as follows:

- Dwelling Loss            $93,360.06
- Personal Property Loss   $62,100.00
- Debris Removal Loss      $5,340.00
- Landscaping Loss         $4,260.00
- Other Structures Loss    $1,394.00
- Loss of Use              $113,689.68
- Total                    $280,143.74

*Id.* at 275.   On April 30, 2014, Smith filed a motion for judgment on the Third Appraisal Agreement.   State Farm objected and requested that the trial court assign a new umpire.   On May 20, 2014, the trial court granted Smith's motion, ordering that State Farm was to pay Smith $280,143.74 minus any advance payments that had already been made.   State Farm filed a motion to correct error, which the trial court denied on June 27, 2014.   State Farm now appeals.

# Discussion and Decision

[10]   State Farm argues that the trial court erroneously denied its motion to correct error.   We review a trial court's ruling on a motion to correct error for an abuse of discretion, which occurs when the decision is against the logic and effect of the facts and circumstances before the court, as well as reasonable inferences that may be drawn therefrom.   *Knowledge A-Z, Inc. v. Sentry Ins.*, 891 N.E.2d 581, 584 (Ind. Ct. App. 2008).

# I. Validity of Third Appraisal Agreement

[11]   State Farm contends that the trial court erred by awarding judgment to Smith based upon the Third Appraisal Agreement.   State Farm raises a number of arguments to support this contention, but there is one that we find dispositive, which is whether the third appraisal complied with the language of the Policy. We find that it did not.

[12]   The Policy sets forth the following process for an appraisal: (1) the insurer and the insured each select an appraiser; (2) the two appraisers—or, if they cannot agree, a trial court—select an umpire; (3) the two appraisers conduct their

appraisals and arrive at a conclusion regarding the amount of the loss; (4) if the appraisers agree, then the amount of the loss is established; (5) if the appraisers disagree, then the matter is submitted to the umpire, who reaches his/her own conclusion regarding the amount of the loss; and (6) agreement by two of the three individuals establishes the amount of the loss. Appellant's App. p. 53. An insurance agreement is a binding contract to which we apply standard rules of contract interpretation. *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 482 (Ind. Ct. App. 2000).

[13] In this case, the trial court concluded that a new appraisal was needed to determine the actual cash value, as opposed to the replacement cost, of Smith's dwelling and personal property. Any new appraisal must be conducted pursuant to the terms of the Policy, which binds Smith and State Farm alike. Therefore, the appraisers selected by Smith and State Farm must *both* conduct their appraisals and arrive at their final calculation regarding the actual cash value of Smith's losses. *Then*, if those amounts differ, the umpire will reach a conclusion. That process, for whatever reason, was not followed during the third appraisal. As that appraisal was not conducted pursuant to the terms of the binding contract in place in this case, it is invalid and should not have been relied upon by the trial court. Therefore, we reverse and remand with instructions that a new appraisal in compliance with Policy terms take place.

# II. The ALE Award

[14]    Although we have reversed and remanded, we choose to address State Farm's argument regarding ALE as the issue will necessarily arise again on remand. State Farm argues that the trial court erred by awarding an amount of ALE that is over three times higher than the amount represented by the First Appraisal Agreement. We agree.

[15]    The Policy language is clear: State Farm "will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months." Appellant's App. p. 43. Those twenty-four months expired for Smith on July 16, 2012. To the extent the ALE award accounted for expenses incurred past that date, it was erroneous.

[16]    Furthermore, the trial court explicitly noted in its summary judgment order that the parties agreed regarding ALE costs, and the parties also agreed that State Farm had already paid the full amount—$31,110—to Smith. There is simply no basis in the record to require State Farm to pay more than this amount for Smith's ALE costs.[2] Regardless of what occurs on remand, under no circumstances is Smith entitled to a greater ALE award. Therefore, we reverse the trial court's order to the extent that it awarded more than $31,110 for Smith's ALE costs.

---

[2] Unlike loss of dwelling and personal property, there is no replacement cost/actual cash value distinction regarding ALE that needs to be adjusted. Appellant's App. p. 43.

The judgment of the trial court is reversed and remanded.

Vaidik, C.J., and Riley, J., concur.