Fern E. FIRESTONE, et al.,
Appellants–Defendants,

v.

AMERICAN PREMIER UNDERWRIT-ERS, INC., (formerly known as Penn Central Corporation; and U.S. Railroad Vest, Corp.), Appellees–Plaintiffs.

No. 06A01–0804–CV–199.

Court of Appeals of Indiana.

Aug. 4, 2008.

John R. Price, Indianapolis, IN, Attorney for Appellants.

Robert J. Palmer, Mishawaka, IN, Attorney for Appellees.

## OPINION

SHARPNACK, Senior Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs Wayne E. Boyd and Bunker Farms, LLC, by Dean V. Kruse (collectively "Bunker Farms") appeal a judgment enjoining them from pursuing a quiet title action and ordering De-Kalb County officials to issue title of real estate to American Premier Underwriters, Inc. ("APU"), formerly known as Penn Central Corporation.[1] We affirm.

### ISSUE

Bunker Farms raises one issue for our review, which we restate as: Whether the trial court erred in concluding Bunker Farms' claims to the subject real estate do not fall within the category of title disputes excluded from the scope of the declaratory judgment entered by the Boone Circuit Court on October 25, 2004.

### FACTS AND PROCEDURAL HISTORY

This appeal arises out of two class actions filed in 1992 involving title to abandoned railroad rights-of-way. The early procedural history of the class actions is found in *Hefty v. All Other Members of Certified Settlement Class,* 680 N.E.2d 843 (Ind.1997), *State ex rel. Firestone v. Parke Circuit Court,* 621 N.E.2d 1113 (Ind.1993) and *Penn Central Corp. v. Buchanan,* 712 N.E.2d 508 (Ind.Ct.App.1999), *trans. denied.* Ultimately, the plaintiff class, consisting of persons owning land "next to or over which Penn Central had a right-of-way for railroad purposes that is no longer used for such purposes," entered into a settlement agreement with the railroad.

(Appellants' App. at 47). The settlement agreement provided:

a. ***Exclusive Remedy: Settled Claims.*** This Agreement shall be the exclusive remedy for any and all Causes of Action of Class Members and for any claim arising out of the subject matter of this Agreement and the Lawsuit by any Class Member against APU, USRV [U.S. Railroad Vest Corporation] and the other released parties. No Released Party shall be subject to liability or expense of any kind to any Class Member with respect to any Causes of Action, except as provided herein. Upon entry of the Final Order and Judgment by the Court approving this Agreement, each of the Class Members shall be forever barred from initiating, asserting, claiming or prosecuting any Causes of Action against any Released Party that was brought or could have been brought in the Lawsuit.

b. ***Dismissal of Action.*** When the Court's Order and Judgment approving this Agreement becomes Final, the Lawsuit shall be dismissed with prejudice as to all Causes of Action of all Class Members.

c. ***Continuing Jurisdiction of Court.*** The Court shall retain exclusive jurisdiction over this Agreement with respect to the performance of the terms and conditions of this Agreement, to assure that all disbursements are properly made and to interpret and enforce this Agreement's terms, conditions, and obligations, and to issue necessary document subpoenas. The Court shall have the power to approve the

---

1. U.S. Railroad Vest Corporation was also named as a party below. The brief and appendix have been filed by APU.

Claims Administrator's designation, appointment and removal of auditors, consultants, and disbursing agents, and the execution of contracts as necessary and appropriate to assure the administration of this Agreement.

(Appellee's App. at 16–17). Following a fairness hearing on the settlement, the Boone Circuit Court, on August 15, 2001, approved the settlement agreement and entered final judgment.

The Boone Circuit Court's "Final Order and Judgment" pertaining to the settlement provided:

4. The Settlement Agreement provides the exclusive remedy for Class Members and any successors in interest *vis-à-vis* (sic) APU and USRV with respect to ownership of abandoned rights-of-way in Indiana owned or operated by APU's predecessors.

5. Pursuant to Section 14(b) of the Settlement Agreement and the Court's final approval of the Settlement Agreement, the lawsuit is dismissed with prejudice as to all causes of action of all Class Members.

(Appellee's App. at 22).

The Boone Circuit Court subsequently entered a declaratory judgment adjudicating the ownership interests in abandoned railroad property in DeKalb County. The declaratory judgment provided:

4. Where the nature of the title (or the "interest status") held by APU to a portion of the Settlement Corridors has been determined pursuant to the Settlement Agreement to be less than fee title, the designation of "Easement" appears in the column titled "Interest Status" in Exhibits A and B. With respect to these portions of the Settlement Corridors, the Court declares that the Settle-

ment Class Members' title to the portion of the Settlement Corridors adjacent to their property is superior to any claims of title by APU. . . .

5. When the title held by APU to a portion of the Settlement Corridors has been determined pursuant to the Settlement Agreement to be fee title, the designation of "Fee" appears in the column titled "Interest Status" in Exhibits A and B. With respect to these portions of the Settlement Corridors, APU's title to the designated portion of the Settlement Corridors is superior to any claim of title by the Class. . . . .

(Appellants' App. at 49).

The declaratory judgment also provided that some title disputes are to be resolved by individual parties:

The Court further declares that it is not within the scope of this Declaratory Judgment to resolve title disputes between individual persons which may occur as a result of conveyances of portions of the Settlement Corridors prior to the entry of this Judgment or otherwise, and that such disputes, to the extent any have arisen or may arise, must be resolved by the individual parties concerned.

(Paragraph 8; Appellants' App. at 50). Finally, the judgment provided that if any information (such as names, addresses, Bates numbers, parcel identifiers, recordation information, etc.) is incorrect, then the correct information "shall control in such instance." (Paragraph 9; Appellants' App. at 50–51). However, "superiority of title" is "conclusively established for purposes of this Order as set forth in the 'Interest Status' columns of Exhibits A and B, subject to the foregoing provisions of Paragraphs 1 through 8 of this order." (Paragraph 9; Appellants' App. at 51). Exhibits

A and B were attached to the judgment to show general information and the "Interest Status" (either "Easement" or "Fee") of the abandoned properties.

The real estate at issue in the present case was designated in Exhibit B of the declaratory judgment as "Fee" in the "Interest Status" column. Thus, APU was declared the owner of the real estate.

After the approval of the class action settlement on July 8, 2000, Bunker Farms filed a complaint to establish reversion of title to real estate and to quiet title in the abandoned right-of-way in DeKalb County. APU filed several motions in the Boone County class action seeking to enjoin Bunker Farms from pursuing its quiet title action, arguing that the quiet title action was contrary to the terms of both the class action settlement agreement reached in the Boone County class action and the 2004 declaratory judgment. The motions emphasized that the settlement agreement addressed the class members' claims against APU, provided for the exclusive remedy against APU, and also provided the Boone Circuit Court with continuing jurisdiction. On January 29, 2008, the Boone Circuit Court granted APU's motions and enjoined Bunker Farms from bringing its action to quiet title.[2] Claiming that Paragraph 8 of the declaratory judgment gives it the right to bring its action, Bunker Farms now appeals.

## DISCUSSION AND DECISION

■ Before addressing the interpretation of Paragraph 8, we emphasize that Bunker Farms does not dispute that the real estate at issue is part of the 2004 declaratory judgment or that Bunker Farms is a member of the class. Further-more, Bunker Farms is not claiming that the declaratory judgment does not cover its interests in the abandoned real estate. The only claim on appeal is that Bunker Farms may pursue its quiet title action under the exception set forth in Paragraph 8 of the declaratory judgment.[3]

■ APU's motions and the trial court's January 29, 2008 judgment were based on the content, interpretation, and impact of the class action settlement agreement and the trial court's 2004 declaratory judgment. On appeal, we review de novo the construction of the settlement agreement and the questions of law raised by interpretation of the 2004 judgment. See *Young v. Indiana Department of Natural Resources*, 789 N.E.2d 550, 554 (Ind.Ct. App.2003), *trans. denied.*

■ We must interpret judgments in the same manner as we interpret contracts. *Tri–Professional Realty, Inc. v. Hillenburg*, 669 N.E.2d 1064, 1068 (Ind.Ct. App.1996), *trans. denied.* A judgment is said to be ambiguous when it would lead two reasonable persons to different conclusions as to its effect and meaning. *Gilbert v. Gilbert*, 777 N.E.2d 785, 790 (Ind.Ct. App.2002). "We attempt to read the provisions of the judgment so as to render all provisions effective and not merely surplusage." *Hillenburg, id.* Judgments should be interpreted in a manner that makes them "serviceable and not useless." *Gilbert, id.*

The settlement agreement disposed of *all* claims in property between APU and class members. Bunker Farms' interpretation of Paragraph 8 to allow its separate suit against APU would eviscerate the settlement agreement and the declaratory judgment. Many, if not all, disputes over

---

2. Bunker Farms filed a "motion to reconsider," which was denied.

3. Bunker Farms makes reference to acquisition of the abandoned real estate by adverse possession. We address that reference below.

ownership between APU and class members would fall within Bunker Farms' interpretation. That would be an absurd result and cannot have been the intent of Paragraph 8. Rather, the paragraph speaks to parties, not including APU, who might dispute who has the ownership of the subject real estate. For example, Paragraph 8 would apply if Bunker Farms and "John Doe" disputed which of them was entitled to whatever rights might exist.

In its quiet title action, Bunker Farms noted both the reversion provision in the deed between the original owners and the railroad and the acquisition of the real estate by adverse possession through use of the real estate for over thirty years by private titleholders after the abandonment of the land by the railroad. As class members, Bunker Farms should have raised these issues before the conclusion of the class settlement. *See Wal–Mart Stores, Inc. v. Bailey*, 808 N.E.2d 1198, 1201 (Ind. Ct.App.2004), *trans. denied* (referring to the res judicata effect of a judgment in a class action).[4]

### CONCLUSION

The trial court properly interpreted Paragraph 8 of its 2004 declaratory judgment order; therefore, its January 29, 2008 order was not erroneous.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

4. Bunker Farms argues that APU may not argue res judicata on appeal because it did not raise the issue below. It is clear that the object of APU's various motions was to emphasize the effect of the Boone Circuit Court's prior determinations.