## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 03 2015, 9:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| P. Adam Davis | Russell L. Brown |
| Davis & Sarbinoff, LLP | Frank D. Otte |
| Indianapolis, Indiana | Sean A. Brown |
| | Clark, Quinn, Moses, Scott & Grahn, LLP |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory J. Mills, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Dean Kimbley, <br> *Appellee-Defendant* | June 3, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1403-PL-212 <br><br> Appeal from the Marion Superior Court <br> The Honorable Michael D. Keele, Judge <br><br> Trial Court Cause No. 49D07-0610-PL-43445 |

**Bradford, Judge.**

# Case Summary

[1] Soon after Appellant-Plaintiff Gregory Mills moved in next-door to Appellee-Defendant Dean Kimbley in 2004, Mills began taking issue with Kimbley's

activities, which included the alleged playing of excessively loud music. In 2006, Mills brought suit against Kimbley, alleging trespass, nuisance, and intentional infliction of emotional distress. After the case went up to the Indiana Supreme Court and back, in September of 2010 the parties entered into an agreed judgment ("the Order"). The Order included provisions regarding the volume at which Kimbley was allowed to play music on his property and Mills's recourse in the event of violations.

[2] In December of 2010, Mills filed a motion for rule to show cause, contempt citation, and damages ("First Contempt Motion"), in which he alleged several violations of the anti-noise and -harassment provisions of the Order. The allegations of harassment involved coughing, yelling, and/or staring by persons on Kimbley's property directed at those on Mills's property. The trial court denied Mills's motion, in an order ruling that he failed to establish violations ("First Contempt Order").

[3] In late 2011, Mills filed another motion for rule to show cause, contempt citation, and damages ("Second Contempt Motion"), in which he ultimately alleged approximately 900 additional violations of the Order by Kimbley. Most of the allegations in the Second Contempt Motion involved harassment by coughing, yelling, and/or staring, and Kimbley sought a *limine* motion preventing Mills from presenting evidence of them on *res judicata* grounds. The trial court granted Kimbley's motion for *limine* order, leaving just eighteen allegations of noise violations. Meanwhile, Kimbley had also filed a motion for

contempt citation ("the Kimbley Motion"), alleging that Mills had impermissibly videotaped activity on Kimbley's property.

[4] After a hearing, the trial court issued its order ("Second Contempt Order") on the Second Contempt and Kimbley Contempt Motions, rejecting Mills's allegations, finding some of Kimbley's to have merit, and awarding Kimbley attorney's fees. Mills appeals, arguing that the trial court improperly granted Kimbley's request for a *limine* order, clearly erred in denying the Second Contempt Motion, and erred in awarding Kimbley attorney's fees. Finding no error, we affirm.

# Facts and Procedural History

[5] For background, we refer to the opinion we issued in a previous appeal in this case:

> Mills and Kimbley are next-door neighbors. Mills lives at 310 West Edgewood Avenue in Indianapolis, where he has lived since March of 2004. Kimbley lives at 302 West Edgewood Avenue, which is the property adjacent to Mills's property on the east side, where he has lived since 1984.
>
> Within approximately two months of his move to 310 West Edgewood Avenue, Mills began keeping a journal of what in his view were Kimbley's disruptive activities. This journal, subsequently submitted as designated evidence in the instant action, covers Kimbley's activities from May 21, 2004 through September 11, 2006, and is eighty-three pages long. On April 25, 2005, Mills began videotaping Kimbley's and his guests' activities without their permission. Due to Mills's videotaping

activities, Kimbley claims to have been deprived the full use and enjoyment of certain portions of his property.

On May 8, 2006, Mills sent Kimbley a letter, in which he demanded that Kimbley not play loud music, permit loud and/or foul language, set off the house alarm, move his trash to Mills's property, enter any part of his property for any reason, contact him or his guests, nor tamper with his fence. In addition, Mills demanded that within seven days of receipt of the letter, Kimbley was to trim certain trees along the fence line and keep the property line clear of any obstructions such as "cinder blocks, mulch, and growth barriers." App. p. 40. Mills also demanded that within seven days Kimbley remove his sprinkler system, which Mills claimed was on his property, and repair a bare area of his yard, which Mills believed was caused by Kimbley's mulch pile. An inspection report issued by the City of Indianapolis found no violation in the placement of the sprinkler system.

Following Kimbley's receipt of this letter, the parties agreed to participate in a voluntary mediation session with the Marion County Prosecutor's Office. At that session the parties reached an agreement providing, *inter alia,* that Mills would trim the trees and that Kimbley's music was not to be so loud as to be heard in Mills's home.

In September of 2006, Mills listed his residence for sale through broker Century 21 with a list price of $139,900. Kimbley, accompanied by his son and a friend, toured Mills's residence with a real estate agent when Mills was not present.

*Mills v. Kimbley*, 909 N.E.2d 1068, 1072-73 (Ind. Ct. App. 2009) (footnote omitted), *trans. granted and vacated*, 932 N.E.2d 1230 (Ind. 2010).

[6] On October 26, 2006, Mills filed suit against Kimbley, alleging trespass, nuisance, and intentional infliction of emotional distress. On December 3, 2008, the trial court granted summary judgment in favor of Kimbley on all claims. When Mills appealed, we affirmed in part, reversed in part, and

remanded with instructions. *Id*. at 1080. The Indiana Supreme Court granted transfer, vacated Mills's appeal on the basis that the trial court's judgment was not final, and remanded to the trial court for the determination of damages.

[7] Rather than proceed to a hearing on damages, the parties entered into the Order, filed on September 15, 2010, and which provides, in part, as follows:

> Plaintiff, Gregory J. Mills, and Defendant, Dean Kimbley, individually, and by counsel, submit the following as an Agreed Judgment to fully and completely dispose of the above captioned litigation. In resolving this matter, the parties hereby agree as follows:
>
> 1. This matter is fully and completely resolved by this Agreed Judgment. As part of this Agreed Judgment neither party shall be determined to be the prevailing party in this litigation. However, except as discussed herein, the claims and actions complained of in this matter shall be completely and fully disposed of by this Agreed Judgment.
>
> 2. The Plaintiff hereby agrees that neither he, nor any resident or visitor to his home shall contact law enforcement authorities for any activities occurring on Defendant's property relating to noise occurring on Defendant's property or for any other action was included in the litigation herein.
>
> 3. Defendant shall be entitled to use his property in accordance with all local ordinances and state statute[s]. Specifically, Defendant shall be permitted to play music and/or create noise outside between the hours of 7:00 A.M. and 10:00 P.M. as permitted by Indianapolis Marion County Code, Section 391-302(c)(2) [("the Indianapolis Noise Ordinance")]. Should Plaintiff feel at any time between the hours of 7:00 A.M. and 10;00 P.M. that the level of music and/or noise coming from Defendant' s

property is at an unreasonable level inside Plaintiff's home, Plaintiff shall politely communicate this to the Defendant via text message or phone call at the number provided to Plaintiff by Defendant. If the Defendant fails to reduce the level of the music and/or noise within thirty (30) minutes of such a request so it is no longer audible inside Plaintiff's home, Plaintiff shall be entitled to capture the level of sound via any reasonable means including, but not limited to, video recording for purposes of showing that Defendant is in breach of this Agreed Judgment.

4. If Defendant is playing music and/or creating noise outside his home which is audible on Plaintiff's property (include[ing] inside and outside of Pl[ai]ntiff's home) between the hours of 10:00 P.M. and 7:00 A.M. or is playing music and/or creating noise from inside any structures located on his property which is audible from Plaintiff's property (including in side and outside of Plaintiff's home), Plaintiff shall politely communicate this fact to Defendant at the phone numbers provided to Plaintiff by Defendant. If the Defendant fails to reduce the level of the music within thirty (30) minutes of such a request so that it is no longer audible within Plaintiff's property, Plaintiff shall be entitled to capture the level of sound via any reasonable means, including, but not limited to, video recording, for purposes of showing that Defendant is in breach of this Agreed Judgment.

5. With the exceptions of the situations included in Paragraph 3 and 4 herein, Plaintiff shall not use a videotape or camera to deliberately capture the activities of any person occurring completely on the Defendant's property.

6. There shall be no harassment between Plaintiff and Defendant or guests/visitors of Plaintiff and Defendant. Should any activity occur which is perceived as harassment, the harassed party shall notify the opposing party of such activity via phone cell or text message and

the opposing party shall take any and all reasonable steps to ensure such activity ceases.

* * * *

9. To the extent one party believes there has been a breach of this agreed judgment, the agreed upon judicial remedy shall be to bring a contempt motion in the above-referenced litigation against the opposing party based on the terms and conditions of this agreed judgment.

10. Given that the damages for such a breach shall be difficult to calculate, the parties hereby agree that the prevailing party in any contempt action occurring as a result of an alleged breach of this Agreed Judgment shall be entitled to liquidated damages in the amount of five hundred dollars ($500.00) for each violation of Agreed Order. Additionally, the prevailing party shall be entitled to any legal fees incurred as a result of the contempt action.

Appellant's App. pp. 47-48. Paragraphs 3 and 4 of the Order shall henceforth be referred to as "the Daytime Noise Clause" and "the Nighttime Noise Clause," respectively.

[8] Matters between Mills and Kimbley did not stay resolved for long. On December 21, 2010, Mills filed the First Contempt Motion. In the First Contempt Motion, Mills alleged thirty-four violations of the Order, starting three days after entry of the Order. The allegations in the First Contempt Motion included eleven allegations of violations of noise provisions, twenty-two allegations of harassment based mostly on "coughing fits" and "staring" directed at Mills and his guests, and one allegation that Kimbley had urinated on Mills's fence. Appellant's App. pp. 35-42.

[9] The trial court held a hearing on the First Contempt Motion, at which, *inter alia*, it apparently heard evidence related to coughing and/or yelling by Kimbley (or others on Kimbley's property) which Mills considered to be harassing. Mills gave Kimbley notice regarding the activity, but the activity continued. Kimbley argued that he did not consider the activity in question to constitute harassment. After the hearing, the trial court denied Mills's First Contempt Motion, in the First Contempt Order, entered on April 14, 2011. The First Contempt Order provides, in relevant part, as follows:

> The Court finds that the Plaintiff, Gregory J. Mills, has failed to meet his burden of showing that the Defendant, Dean Kimbley, has breached the terms of [the Order] filed herein on September 15, 2010; specifically, Plaintiff failed to prove violations of the Daytime Noise Clause, Nighttime Noise Clause and the Harassment Clause as alleged in Plaintiff's [First Contempt Motion].

Appellant's App. p. 51.

[10] Mills appealed the First Contempt Order, alleging that sufficient evidence was presented to prove the allegations in the First Contempt Motion. On February 10, 2012, we issued our memorandum decision in the appeal, concluding that Mills failed to establish that the trial court erred in denying his First Motion for Contempt and that Kimbley was entitled to attorney's fees for defending the appeal. *Mills v. Kimbley*, Cause No. 49A04-1105-CT-236 at *4-5 (Ind. Ct. App. Feb. 10, 2012).

[11] Meanwhile, on November 16, 2011, Mills had filed the Second Contempt Motion. On November 21, Kimbley file a response to the Second Contempt

Motion, in which he sought a *limine* order that principles of *res judicata* prevented Mills from proceeding with claimed Order violations based on coughing and/or staring. Mills amended the Second Contempt Motion on January 15, 2013. In the Second Contempt Motion, Mills alleged additional violations of the Order's noise and harassment clauses between October 24, 2010, and November 30, 2012, and attached to the motion a forty-seven-page list detailing over 900 allegations of violations of the terms of the Order, approximately 890 of which involved coughing and/or staring.

[12] On February 28, 2013, and after a hearing, the trial court granted Kimbley's request for a *limine* order related to allegation of coughing and/or staring, ruling that "[h]ere the relief requested by Mills in his Second Contempt Motion as it relates to harassment by coughing, yelling, etc. cannot be granted because the bringing of said action is barred by the theory of *res judicata*, specifically by both claim preclusion and issue preclusion." Appellant's App. p. 24.

[13] On March 4, 2013, Kimbley filed the Kimbley Contempt Motion, in which he alleged that Mills had violated the Order's provisions on twenty-nine occasions by videotaping activity on Kimbley's property.

[14] Following three evidentiary hearings, the trial court ruled on the Second Contempt Motion and the Kimbley Contempt Motion on January 3, 2014. The Second Contempt Order reads, in part, as follows:

**FINDINGS OF FACTS, CONCLUSIONS OF LAW AND ORDER**

This cause having come before the Court for hearing on a Plaintiff's Second Verified Motion for Rule to Show Cause, Contempt Citation and Damages (as Amended) (hereinafter the "Second Contempt Motion") and the Defendant's Motion for Rule to Show Cause, Contempt Citation and Damages ("Defendant's Contempt Motion"). This Court, on December 12, 2012, entered an Order establishing preliminary matters to be considered on the Second Contempt Motion and held a hearing on such preliminary matters on January 28, 2013 and ruled on such preliminary matters on February 28, 2013. This Court held evidentiary hearings on March 20, 2013, May 20, 2013, June 20, 2013, and November 6, 2013, (collectively hereinafter the "Second Evidentiary Hearings") in support of and in defense of both the Second Contempt Motion and the Defendant's Contempt Motion. The Court having considered all documents filed, evidence properly presented, pleadings filed by the parties, and having considered all parties' arguments, now finds and orders as follows:

## FINDINGS OF FACT REGARDING SECOND CONTEMPT MOTION

1.     During the Second Evidentiary Hearings, Plaintiff Gregory Mills ("Mills") testified that sometime after the Court's April 14, 2011 Order and before filing the Second Contempt Motion he purchased and utilized a decibel meter to attempt to quantify the level of sound coming from Defendant Dean Kimbley's ("Kimbley") property during alleged violations of the Daytime Noise Clause or Nighttime Noise Clause. Mills testified that he had no special training for utilization of the decibel meter and that the decibel meter had never been professionally calibrated. Mills further testified that no one had told him, nor had he independently determined what decibel level would be considered a violation of [the Indianapolis Noise Ordinance].

2.     Mills presented video evidence and testimony regarding fourteen (14) alleged violations of the Daytime Noise Clause and four (4) alleged violations of the Nighttime Noise Clause. No other witness testimony was provided as to the

alleged breach of the Daytime Noise Clause or Nighttime Noise clause on these eighteen (18) occasions.

3. The noise levels shown on the video have substantial variations depending on the location from which the video was shot, the camera which captured the video and the amount and type of other ambient noise present (including but not limited to barking dogs, exterior heat pumps/air conditioning units, traffic, yard equipment or other typical daytime and nighttime residential neighborhood noises). Mills repeatedly testified that he believed the video evidence did not accurately capture the level of noise emitting from Kimbley's property.

4. Mills introduced no evidence, expert or otherwise, that Kimbley's use of his property on the fourteen (14) dates of the alleged Daytime Noise Clause violations was in violation of [the Indianapolis Noise Ordinance].

5. The video evidence of the Nighttime Noise Clause violations occurred prior to the utilization of the decibel meter by Mills, and such video evidence containing substantial variations and ambient noise and his own testimony were the only evidence provided by Mills.

6. On cross-examination Mills indicated that he did not always step outside to verify that the noise captured in the video evidence was captured from Kimbley's property at 302 W. Edgewood.

7. Kimbley testified that he continued to utilize a stereo outside on his property that had been present on his property on September 19, 2010, when IMPD Officer Shanan Abney responded to a police run at Kimbley's property. Kimbley testified that during Abney's 2010 visit a mark was placed on the radio which the officer and Kimbley judged to be not an unreasonable level. During testimony Abney indicated that she did not place a mark on the stereo during her visit and did not recall seeing the stereo during the September 2010 visit to the property. Abney's recollection was varied as to whether or not music was playing during her visit to the property, though after

being read contents of her case report for the visit which explicitly states that she "could not hear the radio until I got to the very back of the yard" and that "(i)n my opinion the radio was not at an unreasonable level and I could not here (sic) Mr. Dean's radio from my squad car in his driveway" admitted the recollection closer to the event was more likely accurate than testimony more than three years later. Abney specifically testified that she did not have to ask Kimbley to reduce the level of the volume of the stereo during her September 2010 visit. No evidence was introduced that Kimbley decreased the level of music in anticipation of Abney's arrival on the property or that it was increased following her departure.

8. Kimbley consistently testified that his reaction to a text message sent from Mills alleging a violation of the Daytime Noise Violation was to confirm that the stereo was not being operated above the mark placed on the stereo during/following the September 2010 visit of Abney. If such confirmation was made, Kimbley testified that no change in the volume of the music was made.

9. Abney did not interview Mills during her September 2010 visit to Kimbley's property and did not visit Mills' property during such a visit. Abney has never interviewed Mills regarding this case and had no information regarding Mills' medical history.

### FINDINGS OF FACT REGARDING DEFENDANT'S CONTEMPT MOTION

10. Paragraph 5 of the Agreed Judgment provides that:

"With the exceptions of the situations included in Paragraph 3 [Daytime Noise] and 4 [Nighttime Noise] herein, Plaintiff shall not use a videotape or camera to deliberately capture the activities occurring completely on the Defendant's Property."

11. During the Second Evidentiary Hearings Kimbley played excerpts of DVD's provided to his counsel by Mills

showing twenty-nine (29) incidents in which videotaping occurred of Kimbley's Property.

12. Kimbley testified and video evidence showed that at least part of the videotape entries for the twenty-nine (29) incidents include events occurring completely on Kimbley's property, including events like individuals mowing his yard, doing various home maintenance tasks, and individuals coming and leaving his property.

13. Mills testified that the twenty-nine (29) video clips were taken either utilizing the Handheld Camera or the Security Cameras. Mills further testified that he had set up the Security Cameras to operate, including aiming them in the direction he desired and controlling when the taping was to occur. Mills further testified that he could position the Security Cameras in such a way as to capture events on his property and not videotape onto Kimbley's property.

14. Five (5) of the twenty-nine (29) alleged violations appear to have involved Mills using "videotape … to deliberately capture the activities of any person occurring completely on Defendant's property." See Agreed Judgment ¶ 5.

15. The remaining twenty-four (24) alleged violations do not appear to involve Mills deliberately capturing the activities of any person occurring completely on Defendant's property as said violations appear either not to involve activities of a person and/or activities of a person occurring completely on Kimbley's property. Furthermore, many of the remaining alleged violations do not appear to be video by Mills "deliberately" for the purpose of capturing said activities as said video was 24-hour surveillance video used to secure Mills' property, not to capture activities occurring completely on Kimbley's property.

## CONCLUSIONS OF LAW AND ORDER REGARDING SECOND CONTEMPT MOTION

1. A civil contempt proceeding is not primarily intended to "punish the contemnor but to coerce action for the

benefit of the aggrieved party," here compliance with the Agreed Judgment. *Bartlemay v. Witt*, 892 N.E.2d 219, 228 (Ind. Ct. App. 2008), *quoting Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005).

2. The parties in this matter have entered into an Agreed Judgment which was approved by this Court. In Indiana, judgments of this type are interpreted in the same manner as contracts between the parties. *Firestone v. American Premier Underwriters, Inc.*, 891 N.E.2d 151, 154 (Ind. Ct. App. 2008), *citing Tri-Professional Realty, Inc. v. Hillenburg*, 669 N.E.2d 1064, 1068 (Ind. Ct. App. 1996). *See also*, unpublished opinion of the Indiana Court of Appeals in case 49A04-1105-CT-236 ("Court of Appeals Affirmation"), p.6. When doing so the court attempts to read all provisions of the judgment to make all provisions effective. *Id*. The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express respective rights and duties. *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003) *citing Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478 (Ind. Ct. App. 2000). Words are to be given their usual and common meaning. Court of Appeals Affirmation, p.6. The entire contract must be read together and given meaning, and words, phrases, sentences, paragraphs and sections cannot be read alone. *GKN Co.*, 798 N.E.2d at 552.

3. With regards to the fourteen (14) alleged violations of the Daytime Noise Clause, the primary dispute between the parties relating to the alleged violations of the Daytime Noise Clause is whether the Agreed Judgment requires any deference to [the Indianapolis Noise Ordinance] or if Mills' subjective reasonableness is the only test for a violation. *See* Court of Appeals Affirmation, fn. 5, p. 8.

4. The complete Daytime Noise Clause reads:

Defendant [Kimbley] shall be entitled to use his property in accordance with all local ordinances and state statute. Specifically, Defendant shall be

permitted to play music and/or create noise outside between the hours of 7:00 A.M. and 10:00 P.M. as permitted by [the Indianapolis Noise Ordinance]. Should Plaintiff [Mills] feel at any time between the hours of 7:00 A.M. and 10:00 P.M. that the level of music and/or noise coming from Defendant's property is at an unreasonable level inside Plaintiff's home, Plaintiff shall politely communicate this to the Defendant via text message or phone call at the numbers provided to Plaintiff by Defendant. If Defendant fails to reduce the level of the music and/or noise within thirty (30) minutes of such a request so it is no longer audible inside Plaintiff's home, Plaintiff shall be entitled to capture the level of sound via any reasonable means, including, but not limited to, video recording for purposes of showing that Defendant is in breach of this Agreed Judgment.

5. Mills argued during the Second Evidentiary Hearings the only relevant test to determine a violation of the [] Daytime Noise Clause is whether Mills himself determined the noise from Kimbley's property to be unreasonable. As discussed in the Court of Appeals Affirmation, such a reading ignores the first two sentences of the Daytime Noise Clause and does not give a complete reading to the provisions of the Daytime Noise Clause as required under Indiana law.

6. Mills presented no testimony during his case in chief that on any of the fourteen (14) alleged violations of the Daytime Noise Clause that Kimbley's use on these days was in violation of [the Indianapolis Noise Ordinance] or other applicable laws or regulations. The absence of such evidence prevents Mills' recovery against Kimbley for a violation of the Daytime Noise Clause.

7. Mills' evidence regarding violations of the Nighttime Noise Clause failed to prove that the noise level was audible on Mills' property and failed to prove that the

noise/music which was being generated was being created from Kimbley's property.

**IT IS THEREFORE ORDERED AND DECREED** that Mills' request for an order finding Kimbley to be in violation of the Agreed Judgment's Daytime Noise Clause and Nighttime Noise Clause for the incidents included in the Second Contempt Motion is hereby denied and Mills shall take nothing from the Second Contempt Motion's request for an award of damages and attorney's fees as it relates to such claims.

## CONCLUSIONS OF LAW AND ORDER REGARDING DEFENDANT'S CONTEMPT MOTION

1.      Paragraph 5 of the Agreed Judgment specifically prohibits Mills from videotaping to "deliberately capture the activities of any person occurring completely on the Defendant's property" unless the videotaping is occurring to capture evidence of a violation of the Daytime or Nighttime Noise Clause of the Agreed Judgment.

2.      A proper reading of the Agreed Judgment therefore bars Mills from videotaping activities on Kimbley's property for any other purpose not related to attempting to prove a violation of the Daytime Noise Clause or Nighttime Noise Clause.

3.      The video evidence provided by Kimbley during the Evidentiary Hearings shows five (5) incidents wherein Mills violated Paragraph 5 of the Agreed Judgment.

**IT IS THEREFORE ORDERED AND DECREED** that Kimbley's request for an order finding Mills to be in violation of Paragraph 5 of the Agreed Judgment for five (5) incidents included in the Defendant's Contempt Motion is hereby granted and Mills is hereby determined to be in contempt of Paragraph of the Agreed Judgment.

## CONCLUSIONS OF LAW - LIQUIDATED DAMAGES

1.      Paragraph 10 of the Agreed Judgment provides that a prevailing party on a contempt action shall be entitled to

liquidated damages in the amount of five hundred dollars ($500.00) for each violation of the Agreed Judgment

2.     This Court has determined that Kimbley is the prevailing party as it relates to five (5) violations of Paragraph 5 of the Agreed Judgment as alleged in the Defendant's Contempt Motion.

**IT IS THEREFORE ORDERED AND DECREED** that Mills is hereby ordered to pay Kimbley an amount of $2,500.00 as liquidated damages. This Order shall be without relief from valuation and appraisement laws and shall be reduced to a Judgment against Plaintiff in favor of Defendant and be entered by the Clerk of the Courts into the Roll of Judgments.

### CONCLUSIONS OF LAW - ATTORNEY'S FEES

1.     Paragraph 10 of the Agreed Judgment provides that the prevailing party of an action shall be entitled to any and all legal fees incurred as a result of the contempt action.

2.     Kimbley has been determined by this Court to be the prevailing party on the Second Contempt Motion and the Defendant's Contempt Motion.

3.     Kimbley's counsel has provided an affidavit for fees and associated costs related to the defense of the Second Contempt Motion and prosecution of the Defendant's Contempt Motion for fees and costs in the amount of Sixteen Thousand Nine Hundred Thirty Six and 55/100 Dollars ($16,936.55).

4.     This Court finds such amounts to be reasonable in light of the amount of work related to the matters.

**IT IS THEREFORE ORDERED AND DECREED** that Plaintiff shall pay to Defendant an award in the amount of Sixteen Thousand Nine Hundred Thirty Six and 55/10 Dollars ($16,936.55).  This Order shall be without relief from valuation and appraisement laws and shall be reduced to a Judgment against Plaintiff in favor of Defendant and be entered by the Clerk of the Courts into the Roll of Judgments.

Appellant's App. pp. 27-34.

Mills contends that the trial court erred (1) in concluding that his allegations of harassment based on coughing and staring were barred by *res judicata*, (2) in rejecting his allegations of noise violations, and (3) in awarding Kimbley attorney's fees.

# Discussion and Decision

## I. *Res Judicata*

Mills contends that the trial court's *limine* order regarding his allegations of harassment based on coughing and/or staring was in error. Both parties agree that the *limine* order is to be reviewed as a judgment on the pleadings pursuant to Indiana Trial Rule 12(C).

> We review *de novo* a trial court's ruling on a Rule 12(C) motion for judgment on the pleadings. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). We accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. *Id.* (citing *Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 562 (Ind. 1996)). A Rule 12(C) motion for judgment on the pleadings is to be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Id.* (quoting *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 (Ind. 2001) (quoting *Culver-Union Twp. Ambulance Serv. v. Steindler*, 629 N.E.2d 1231, 1235 (Ind. 1994))).
>
> When reviewing a Rule 12(C) motion, we may look only at the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the complaint taken as admitted. *Waldrip v. Waldrip,* 976 N.E.2d 102, 110 (Ind. Ct. App. 2012).

*Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013), *trans. denied*.

[17] The basis for the trial court's *limine* order was that the issue of coughing and/or staring as harassment was *res judicata*, having been resolved in the First Contempt Order.

> Res judicata serves to prevent repetitious litigation of disputes which are essentially the same. *MicroVote General Corp. v. Ind. Election Comm'n,* 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). The doctrine of res judicata consists of two distinct components: claim preclusion and issue preclusion. *Dawson v. Estate of Ott,* 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). Claim preclusion applies when a final judgment on the merits has been rendered in a prior action, and it acts to bar a subsequent action on the same claim between the same parties. *MicroVote,* 924 N.E.2d at 191. Claim preclusion applies when the following four factors are satisfied:
>
>> 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.
>
> *Id.*

*Hilliard v. Jacobs*, 957 N.E.2d 1043, 1046 (Ind. Ct. App. 2011), *trans. denied*.

[18] Mills contends that the former judgment regarding coughing, yelling, and/or staring was not rendered on the merits such that application of *res judicata* is appropriate. Specifically, Mills argues that the previous disposition of the

coughing and/or staring claim in the First Contempt Order was merely a determination that the evidence supporting his previous claims was insufficient, not that coughing, yelling, and/or staring are not inherently harassing. Kimbley counters that, considering the evidence heard in the first contempt proceeding, the trial court's determination was, in fact, a determination that the activity cited by Mills is not inherently harassing. In the end, these distinctions make no difference if the allegations brought by Mills in the Second Contempt Motion are essentially of the same character as the allegations rejected by the trial court in the First Contempt Order. With this in mind, we agree with Kimbley.

[19] The harassment clause of the Order provided that, in the event one party found behavior to be harassing, that party was to notify the other party, and the other party was to take any and all "reasonable" steps to cease the activity. The trial court heard evidence that (1) Kimbley or others on Kimbley's property coughed and/or yelled in Mills's or Mills's guests' hearing and/or stared at Mills or his guests, (2) Mills notified Kimbley that he found the activity to be harassing, and (3) Kimbley did not stop. Yet, the trial court found in the First Contempt Order that Mills failed to establish harassment. The only logical basis for this ruling is that the trial court concluded that the activity complained of, *i.e.*, coughing, yelling, and/or staring, did not rise to the level of harassment. Indeed, the trial court confirmed this during the hearing on the *limine* motion, stating, "And that's in essence … that [coughing could never be a violation of the Order] is in essence what this court found [in the First Contempt Order]." Tr. pp. 36-37.

Review of Mills's specific allegations of harassment reveal them to be equivalent in nature to the allegations rejected in the First Contempt Motion. Moreover, although Mills argues on appeal that he was deprived of his opportunity to present evidence showing that Kimbley's acts of alleged harassment had become more extreme, we have no way of knowing this, because he made no offer of proof to that effect. "[F]ailure to make an offer of proof results in waiver of the evidentiary issue." *Bedree v. Bedree*, 747 N.E.2d 1192, 1196 (Ind. Ct. App. 2001), *trans. denied*. Consequently, we conclude that the trial court did not err in concluding that Mills's claims related to alleged harassment were *res judicata*. *See Kielczewski v. Rochwalik*, 130 N.E.2d 785, 788 (Ind. Ct. App. 1955) ("It is fundamental, we think, that facts or questions which were in issue in a former action and were there judicially determined are conclusively settled by a judgment rendered therein, and that such facts or questions become *res adjudicata* and may not be litigated in a subsequent action between the same parties or their privies regardless of the form the issue may take in the subsequent action…. The factual issues in both proceedings were substantially the same and were found against her in the first suit and are therefore *res adjudicata*.").

## II.  The Second Contempt Order

Mills challenges the trial court's determination that Kimbley was not found to be in contempt for violating the provisions of the Order.

> In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind.*

*High School Athletic Ass'n v. Martin,* 765 N.E.2d 1238, 1241 (Ind. 2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. *Bowyer v. Ind. Dep't of Natural Resources,* 798 N.E.2d 912, 918 (Ind. Ct. App. 2003). The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court. *Hancz v. City of South Bend,* 691 N.E.2d 1322, 1324 (Ind. Ct. App. 1998). We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Id.*

*City of Gary v. Major,* 822 N.E.2d 165, 170-71 (Ind. 2005). "When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses." *Williamson v. Creamer,* 722 N.E.2d 863, 865 (Ind. Ct. App. 2000).

[22] The provisions of the Order are at issue, and "it is well settled that the construction of settlement agreements is governed by contract law." *McGraw v. Marchioli,* 812 N.E.2d 1154, 1157 (Ind. Ct. App. 2004).

> When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 478 (Ind. Ct. App. 2000), *trans. denied.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a

contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

*GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003).

Mills challenges some of the trial court's findings as well as its ultimate conclusion.

# A. Challenged Findings of Fact

## 1. Sound Meter Findings

The trial court found that Mills had never been trained in the use of his sound meter and that Mills had no knowledge regarding what decibel level would be considered a violation of the Indianapolis Noise Ordinance. Mills points to evidence that the meter in question gave the same reading every time when a particular song was played on Mills's stereo system at a particular volume. As Kimbley points out, however, all this tends to prove is *consistency*, not accuracy. In any event, Mills has not established how readings from his sound meter, even if accurate, would tend to show a violation of the Order's noise provisions, as the Order's provisions contain no mention of decibel levels or any other ostensibly objective measure of noise.

## 2. Sound Origin Findings

Mills challenges the trial court's finding that he did not always step outside to verify the source of noise captured on videotape, a finding that relates to Mills's four allegations of violations of the Nighttime Noise Clause. As Kimbley concedes, this finding is clearly erroneous. Mills points to his testimony that in all cases he believed the source of the noise was on Kimbley's property. The

trial court, however, was free to find that this testimony was either mistaken or not credible, and apparently did. Mills's argument is an invitation to reweigh the evidence, which we will not do. *See Williamson*, 722 N.E.2d at 865.

### 3. Abney's Testimony

Kimbley testified that Officer Abney marked his radio in September of 2010 to indicate the volume below which it would be in compliance with the Indianapolis Noise Ordinance. Officer Abney, however, testified that she did not mark Kimbley's radio. Mills points to this discrepancy and alleged contradictions in previous testimony by Kimbley, seemingly arguing that Kimbley's credibility throughout this litigation is fatally undercut. Again, Mills's argument is essentially nothing more than an invitation to reweigh the evidence, which this court will not do. *See id*. Mills has failed to establish that any of the trial court's findings of fact are clearly erroneous.[1]

## B. Conclusion that Kimbley Was Not in Violation of Nighttime Noise Clause

Mills challenges the trial court's conclusion that Kimbley did not commit the four violations of the Nighttime Noise Clause alleged in the Second Contempt Motion. Although Mills did present evidence that, if credited, would establish

---

[1] Mills also contends that Kimbley's undermined credibility provides us with a basis to revisit and reverse the First Contempt Order, issued over four years ago and already challenged (and affirmed) on appeal. Mills provides us with no authority that indicates we could do such a thing, even if we accepted his arguments regarding Kimbley's credibility.

violations of the Nighttime Noise Clause, we have already noted that the trial court was free to conclude that Mills's testimony regarding the source of the noise was either mistaken or not credible. Mills's argument is yet another invitation to reweigh the evidence, which we will not do. *See id.*

## C. Alleged Violations of the Indianapolis Noise Ordinance

[27]     Finally, Mills contends that the record establishes that Kimbley violated the Indianapolis Noise Ordinance in all fourteen alleged violation of the Daytime Noise Clause and all four alleged violations of the Nighttime Noise Clause. The Indianapolis Noise Ordinance provides, in part, as follows:

> (a)     For purposes of this chapter, unreasonable noise shall mean sound that is of a volume, frequency, or pattern that prohibits, disrupts, injures, or endangers the health, safety, welfare, prosperity, comfort, or repose of reasonable persons of ordinary sensitivities within the city, given the time of day and environment in which the sound is made.
>
> (b)     Except as otherwise provided in this section, it shall be unlawful for any person to make, continue, or cause to be made or continued any unreasonable noise.
>
> (c)     In addition to the foregoing, any person who performs any of the acts enumerated in this subsection, or who causes or allows the performance of any of such acts in or upon any property owned, occupied, or controlled by him, shall be in violation of this section.
>
> > (1)     Horns and signaling devices. The sounding of any horn or signaling device on any automobile, motorcycle, or other vehicle in any public street or public place of the city, in a manner that makes

unreasonable noise and continuing to do so after being asked to stop.

(2) Machines and devices for producing sound. Playing, using, or operating, or permitting to be played, used, or operated, any radio, television, digital media player, loudspeaker, sound amplifier, musical instrument, or any machine or device for producing or reproducing sound in a manner that makes unreasonable noise and continuing to do so after being asked to stop, except when a permit granted therefor for some special occasion is in effect. The operation of any such machine or device in a manner that produces sound plainly audible to a person with normal hearing:

a. From any place other than the property on which the sound source is located when the machine or device is being operated between the hours of 10:00 p.m. and 7:00 a.m.;

b. From a distance greater than seventy-five (75) feet from the sound source of the machine or device when it is located in any public street or public place of the city; or

c. In any public conveyance other than a taxicab or jitney, except for a person who is voluntarily listening to the machine or device through earplugs; shall be prima facie evidence of a violation of this subsection, except when a permit granted therefor for some special occasion is in effect.

[28] As for the alleged daytime allegations, the only evidence in the record that any of the noises emanating from Kimbley's property were "unreasonable" was Mills's testimony. The trial court was free to disregard this testimony on the basis that it found Mills not to be a "reasonable person[] or ordinary

sensitivities" based on the record, including Mills's videotaped evidence of the alleged violations. As for the alleged nighttime violations, we have already concluded that the trial court's finding that Mills failed to prove that the noise was coming from Kimbley's property was not clearly erroneous. We conclude that the trial court did not abuse its discretion in declining to find Kimbley to be in contempt of court for violating the provisions of the Order.

## III. Attorney's Fees

Finally, Mills contends that the trial court erred in awarding Kimbley all of his requested attorney's fees, as he was successful in establishing only five of the twenty-nine violations alleged in the Kimbley Contempt Motion. Mills essentially argues that Kimbley cannot be a "prevailing party" pursuant to the Order because not all of his claims were successful. The term "prevailing party" is not defined in the Order, but the Indiana Supreme Court has adopted the following definition: "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, *even though not necessarily to the extent of his original contention*. The one in whose favor the decision or verdict is rendered and judgment entered." *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008) (citing BLACK'S LAW DICTIONARY 1188 (6th ed. 1990)) (emphasis added). The fact that not all of Kimbley's claims carried the day does not prevent him from being a prevailing party. The trial court did not err in awarding Kimbley attorney's fees.

## Conclusion

We conclude that the trial court did not err in concluding that Mills's allegations of harassment were *res judicata*, did not abuse its discretion in denying Mill's allegations of contempt and granting some of Kimbley's, and did not erroneously award attorney's fees to Kimbley pursuant to the order.

The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.